## McCabe v. Goodwine.

CONTRACT FOR BENEFIT OF ANOTHER.—*Levy of Execution before Commencement of Bankruptcy Proceedings.—Release of Levy.—Satisfaction of Judgment.—Assignee's Sale and Conveyance Subject to Encumbrances.—Indemnity Bond.*—In an action by a judgment creditor, against the purchaser of real estate formerly belonging to E., one of the judgment debtors, and subject to the lien of the judgment, to enforce an alleged contract by the purchaser to pay such judgment, the court found specially as follows, viz. : that, at a time when D. and E., such debtors, were in fact insolvent, a third person, after service of process on the debtors, and then the plaintiff, on the appearance of the debtors without process, severally recovered judgments against the debtors, having priority of lien upon such real estate in the order named ; that such judgments were recovered *bona fide*, and without knowledge by either the creditors or the debtors of the insolvency of the latter ; that executions upon such judgments were levied by the sheriff on sufficient other property belonging to the debtors to satisfy both writs ; that upon a petition subsequently filed the debtors were adjudged involuntary bankrupts, and the property levied upon was taken possession of and sold by the assignee in bankruptcy, the prior judgment lien satisfied from the proceeds of such sale, and the residue covered into the general fund without satisfying any part of the plaintiff's judgment; that subsequently the assignee sold, and, upon his petition setting out the terms of such sale, the bankrupt court ordered him to convey, to the defendant, the land in controversy, for a certain sum, subject to " all taxes, liens and encumbrances, on and against said land," as part of the purchase consideration, which the defendant, by his bond, " assumed the payment of" and agreed to indemnify the bankrupt estates against ; and that there were, at that time, certain taxes and a mortgage for purchase-money due upon the land and having priority over the plaintiff's judgment.

*Held*, as a conclusion of law, that the levy of plaintiff's execution was valid against the assignee, that the officer holding it should not have delivered possession to the assignee, that the levy operated as a satisfaction of the plaintiff's judgment, that such judgment was not a lien upon the land when it was purchased by the defendant, and that the plaintiff can not recover.

From the Warren Circuit Court.

*J. McCabe*, for appellant.

*J. W. Sutton, R. C. Gregory* and *W. B. Gregory*, for appellee.

WORDEN, C. J.—Complaint by the appellant, against the appellee, in two paragraphs.

The first alleged, in substance, that in November, 1873, the plaintiff recovered a judgment in the Warren Circuit Court, against Daniel and Edward Bowlus, for the sum of three thousand and fifty-four dollars and some cents, which remains unpaid; that, at the time of the recovery of the judgment, Edward Bowlus was the owner of certain land described, situate in Warren county, upon which the judgment became a lien; that afterward both Daniel and Edward Bowlus were adjudged bankrupts, in the District Court of the United States for the District of Indiana, and that Joseph Poole was appointed their assignee, and the title to their property became vested in the assignee; that in May, 1874, on the petition of the assignee, the District Court ordered him to sell the land mentioned to the defendant, James Goodwine, on the terms already theretofore agreed upon, set forth in the petition, viz., for the sum of eleven hundred dollars cash, to be paid to the assignee by Goodwine, and Goodwine to assume and pay, as part of the purchase-money for the land, all liens and encumbrances that might attach to the land, and relieve the estate of the bankrupts from all liability therefrom; and it was ordered that the assignee take a bond from Goodwine to save and hold the bankrupts' estates free from any and all liability on account of liens and encumbrances on the land, and that, upon the payment to him of the money mentioned, he make a conveyance of the land to the purchaser, Goodwine; that Goodwine paid the money, and the conveyance was made to him in pursuance of the order of the court; that Goodwine executed a bond containing the following stipulation: "Now, as a part of the consideration for said land, the undersigned hereby assumes the payment of all taxes, liens and encumbrances on and against said land, and hereby covenants and agrees and binds himself to indemnify and save harmless the estates of said bankrupts from any and all liability, on ac-

count of any and all liens and encumbrances or debts, on or on account of said land;" that the proceedings in bankruptcy were fully completed and ended before the commencement of this suit; that, prior to the commencement of this suit, the plaintiff accepted the terms of the agreement of said Goodwine, in the purchase of said land, and especially his aforesaid agreement to pay the liens and encumbrances on the same, and fully accepted the beneficial provisions of all of the defendant's obligation and undertaking, as set forth in the order of the District Court and the bond above referred to ; that, before the commencement of this suit, the plaintiff notified the defendant that he had made such acceptance, and demanded the payment of his said judgment, which the defendant refused and still refuses to pay. Judgment is demanded for five thousand dollars and costs.

The second paragraph was much like the first in its general averments, and adds that before the purchase of the land of Poole by Goodwine, the latter took an assignment, in writing, to himself from William Ferguson, of certain notes and a mortgage executed by Edward Bowlus, on the land, to secure the payment of the notes, amounting to $9,000 and interest. The mortgage bears date October 31st, 1872, and was duly recorded. That Goodwine, in violation of his obligation and undertaking above set forth, is claiming said mortgage to be a subsisting lien upon the land prior to the plaintiff's judgment. Prayer, that the mortgage be adjudged merged, extinguished and satisfied. so far as the plaintiff is concerned, by virtue of the defendant's purchase and agreement above set up, and that the land be declared subject to sale to satisfy the plaintiff's judgment, freed from any prior encumbrance on account of the mortgage.

In making up the issues, demurrers were overruled to several paragraphs of the defendant's answer, to which

rulings the plaintiff excepted. But, as no question is made in the brief of counsel for the appellant in respect to these rulings, we need not make any further statement of the pleadings in the cause. We have set out the substance of the complaint in order to a ready understanding of the facts found by the court.

The cause was submitted to the court for trial, who, at the request of the parties, found the facts specially, and stated his conclusions of law thereon, as follows:

"1.   That, on the 21st day of November, 1873, the plaintiff recovered in this court a judgment against Edward and Daniel Bowlus for $3,054, and $31$\frac{65}{100}$ costs, collectible without relief from appraisement laws, and bearing interest at the rate of ten per cent. per annum.

"2.   That, on the 21st day of November, 1873, Edward Bowlus held the legal title of the north half of section three (3), township (22) north, range 9 west, in Warren county, Indiana.

"3.   That, in December, 1873, an involuntary petition in bankruptcy was filed against Daniel and Edward Bowlus, in the United States District Court for the district of Indiana, upon which the said Daniel and Edward Bowlus were duly adjudged bankrupts, and Joseph Poole was, in due course of proceeding, appointed the assignee in bankruptcy of the said bankrupts.

"4.   That all the proceedings under said petition in bankruptcy were fully and entirely at an end before the present suit of the plaintiff was commenced.

5.   "That Daniel and Edward Bowlus were farmers, engaged in the business of farming; that they were insolvent when plaintiff's judgment was obtained, and that said judgment was obtained without process, upon a voluntary appearance and submission of the cause to the court for trial.

"6.   That, when plaintiff obtained his judgment, he did not know that the said Daniel and Edward were insolvent,

and the judgment was not procured by the defendants thereto, for the purpose of preferring plaintiff to their other creditors ; that the said Daniel and Edward did not then know or believe themselves to be insolvent.

"7. That, on the 18th day of May, 1874, the said assignee in bankruptcy filed his petition in the bankrupt court, as alleged in the complaint, and that said petition and the proceedings thereon were as set forth in ' Exhibit A,' filed with plaintiff's complaint herein ; that afterward, on the 15th day of June, 1874, the assignee sold to the defendant herein, upon the terms theretofore agreed upon between them, and according to the direction of said court, the lands hereinbefore described ; that this sale was made upon the terms set forth and contained in the said petition and the order of the court made thereon.

" 8. That, on the 15th day of June, 1874, the defendant herein executed and delivered to the said assignee the bond, a copy of which is filed with the plaintiff's complaint as 'Exhibit B,' and, at the same time, paid to the said assignee, $1,100, and received from him a deed for the said lands, containing a recital that the ' consideration for the conveyance was $1,100, and the payment' by the grantee ' of all liabilities, liens and incumbrances now existing against said lands,' which deed, together with a copy of the said proceedings in the bankrupt court, the defendant herein caused to be recorded in the office of the recorder of Warren county, on the 18th day of September, 1874, and defendant now occupies said lands under said deed.

" 9. That, before the bringing of this suit, the plaintiff notified the defendant that he accepted the ' beneficial provisions' of the contract between the defendant and the assignee, and demanded from the defendant payment of his judgment, which payment the defendant refused to make.

"10. That, on the 31st day of October, 1872, Edward

McCabe *v.* Goodwine.

Bowlus purchased the lands hereinbefore described, from William Ferguson, and on that day executed and delivered to Ferguson the mortgage mentioned in the said petition of the assignee in bankruptcy, to secure the payment of the purchase-money due from Bowlus to Ferguson for the land.

" 11. That, at the time of the filing of said petition by said assignee, there were $7,000 principal of said purchase-money unpaid and secured by said mortgage, which sum bore interest at the rate of ten per cent. per annum, making then due, of principal and interest, about $7,800; that this sum of $7,000 and accrued interest was unpaid on the 15th day of June, 1874, and that on that date there was also a lien on said lands for State and county taxes in the sum of $100 ; that said lands were of the value of $9,000.

" 12. That said mortgage was recorded in the office of the recorder of Warren county, on the 31st day of October, 1872, and was assigned in writing, together with the notes secured thereby, to the defendant herein, on the 28th day of February, 1874.

" 13. That, at the November term of this court for the year of 1873, Jacob Hanes recovered a judgment therein against Daniel and Edward Bowlus for $1,763.58; that an execution thereon was duly issued on the 18th day of November, 1873, and placed in the hands of the sheriff of said county, at 11 o'clock A. M. of said day.

" 14. That, on the 21st day of November, 1873, the plaintiff herein caused to be duly issued, from the office of the clerk of said county, an execution on his judgment for $3,054 and costs, which was placed in the hands of the sheriff of said county at 11 o'clock A. M. of said day.

" 15. That, on the 21st day of November, 1873, the said sheriff of Warren county, Indiana, duly levied said executions upon sufficient property belonging to said Daniel

and Edward Bowlus, subject to execution in said county, to pay and satisfy the said judgments recovered by Hanes and by the plaintiff, and to pay and satisfy the executions thereon then in the hands of said sheriff.

"16. That, after the said property had been levied upon by the sheriff, but before it had been sold by him, the proceedings in bankruptcy were begun against the said Daniel and Edward Bowlus and the assignee appointed, and that the assignee in bankruptcy took possession of all the property of said Daniel and Edward, including the property in the custody of the sheriff under the levy made upon the Hanes and McCabe executions.

"17. That afterward the property levied upon by the sheriff was sold by the assignee in bankruptcy, and a portion of the fund arising therefrom applied to the full payment of the Hanes judgment, the residue of such funds continuing and remaining in the hands of the assignee until the final distribution of the assets of the estates of the bankrupts, and that no part thereof was applied to the payment, in whole or in part, of the plaintiff's judgment.

" And the court finds, as conclusions of law, from the foregoing facts:

"1. That the plaintiff's judgment was, at the time of the commencement of the proceedings in bankruptcy, a valid judgment, obtained *bona fide*, and not in violation of the bankrupt laws of the United States, and became a lien upon the lands described in the complaint at the date of its rendition. *Little, Assignee*, v. *Alexander*, 21 Wallace, 500.

"2. That the bond given by the defendant to the assignee is a valid obligation, and that, by its terms, the defendant is liable for the payment of all the liens upon the land purchased by him from the assignee, that were subsisting and unsatisfied at the date of his purchase. *Hardy* v. *Blazer*, 29 Ind. 226.

" 3. That the levy made by the sheriff, under the execution issued upon the plaintiff's judgment on the property of Daniel and Edward Bowlus, gave the plaintiff a valid lien thereon, superior to the claim of the assignee in bankruptcy. Bump Bankr., 8th ed., 164; Herman Ex. 279; *In re Campbell*, 7 Am. L. Reg. N. s. 100; *In re Schnepf*, 7 Am. L. Reg. N. s. 204; *Marshall* v. *Knox*, 12 Am. L. Reg. N. s. 630; 2 Bankr. Reg. 124; *Sharman* v. *Howell*, 40 Ga. 257; S. C., 2 Am. Rep. 576; *Parks* v. *Sheldon*, 36 Conn. 466; *O'Harra* v. *Stone*, 48 Ind. 417.

" 4. That the lien of that levy continued after the property came into the possession of the assignee in bankruptcy. 7 Am. Law Reg. N. s. 100, 204, *supra; In re Hughes*, 11 Nat. Bankr. Reg. 452; Bump Bankr. 164.

" 5. That the levy was a satisfaction, *prima facie*, of the plaintiff's judgment, and the *onus* is cast upon the plaintiff of showing, before he can take other proceedings upon his judgment, that, from no fault of his, the levy has not proved productive of a complete satisfaction. Freeman Ex., secs. 269, 271; *Lyon* v. *Hampton*, 20 Pa. State, 46; *Hunt* v. *Breading*, 12 S. & R. 37; *Ford* v. *Geauga County*, 7 Ohio, 492; *Lindley* v. *Kelley*, 42 Ind. 294.

" 6. That, when the defendant purchased the lands described in the complaint, the plaintiff's judgment was satisfied *sub modo*, and he could not then have maintained an action upon it, and can not now do so, without showing that the levy was legally disposed of without producing an absolute satisfaction; that the levy could not be abandoned to the injury of the defendant. Freeman Ex., sec. 271; *M'Intosh* v. *Chew*, 1 Blackf. 289; *Stewart* v. *Nunemaker*, 2 Ind. 47; *Lindley* v. *Kelley*, 42 Ind. 294, 307.

" 7. That no reason is shown why the levy was not productive of an absolute satisfaction of the plaintiff's judgment.

" 8. That it was the duty of the plaintiff to diligently pursue and protect his levy. *Frank* v. *Brasket*, 44 Ind. 92; *Stewart* v. *Nunemaker*, 2 Ind. 47; Freeman Ex., sec. 269.

" 9. That, upon the foregoing facts, the plaintiff is not entitled to recover a judgment against the defendant.

" The court therefore finds for the defendant."

Exception was duly taken by the plaintiff to the conclusions of law stated, and judgment was rendered for the defendant.

Errors are assigned upon the conclusions of law, which bring them in review here.

Goodwine, by his purchase, took the land subject, doubtless, to all the liens thereon, and those liens might be enforced against the land in the modes prescribed by law.

The levy of the execution upon the property of the Bowluses was made before the proceedings in bankruptcy were had, and, of course, before the execution by the defendant of the bond mentioned; and if the levy, under the facts found, operated as a satisfaction of the plaintiff's judgment, then the bond given by Goodwine, admitting it to have been valid and binding upon him personally for the absolute payment of all liens upon the land, a point which we need not decide, it did not bind him for the payment of the plaintiff's judgment, which was not a lien upon the land, because it had been satisfied.

We think it clear that the levy, it having been made upon sufficient property to satisfy the judgment, must be regarded, under the facts found, as a complete satisfaction.

A levy upon property sufficient to satisfy an execution operates, *prima facie*, as a payment of the judgment on which it issues, and will be a complete satisfaction, unless, without fault of the plaintiff therein, it has failed to be productive of complete satisfaction.

Whatever might be the effect of such levy, as between the parties, where the property has been released therefrom by their consent, the plaintiff can not abandon such

levy, to the injury of third persons. See the authorities cited in the opinion of the court below. We will notice some of them more in detail :

In the case of *M'Intosh* v. *Chew*, 1 Blackf. 289, the court said, among other things :

" Viewing the subject, then, on the principles of strict law or of a liberal construction, or on considerations of natural reason and convenience, we are of opinion that goods or lands taken in execution, must be considered as a satisfaction of the judgment debt, and may be pleaded in bar of any other action against the same defendant for the same demand, until their insufficiency is made manifest by a sale and return, showing the amount made of the property so levied ; and then they are an absolute satisfaction *pro tanto*, and the plaintiff may proceed for what remains."

The case of *Lindley* v. *Kelley*, 42 Ind. 294, is to the same effect, and contains a reference to most, if not all, of the previous decisions of this court upon this point.

In the case last cited, the following quotation is made from the opinion of the Supreme Court of the United States, in the case of *United States* v. *Dashiel*, 3 Wal. 688 :

" Where the goods seized are taken out of the possession of the debtor, and they are sufficient to satisfy the execution, it is doubtless true, that if the marshal or sheriff wastes the goods, or they are lost or destroyed by the negligence or fault of the officer, or if he misapplies the proceeds of the sale, or retains the goods and does not return the execution, the debtor is discharged ; but if the levy is overreached by a prior lien, or is abandoned at the request of the debtor or for his benefit, or is defeated by his misconduct, the levy is not a satisfaction of the judgment. Rightly understood, the presumption is only a *prima facie* one in any case, and the whole extent of the rule is that the judgment is satisfied when the execution has been so used as to change the title of the goods, or in some way to

deprive the debtor of his property. When the property is lost to the debtor in consequence of the legal measures which the creditor has pursued, the debt, says BRONSON, C. J., is gone, although the creditor may not have been paid. Under these circumstances the creditor must take his remedy against the officer, and if there be no such remedy he must bear the loss."

What was thus said, was said in a case where the question arose between the plaintiff and the defendant in the execution, there being no rights of third persons involved.

In *Hunt* v. *Breading*, 12 S. & R. 37, it was held, that a judgment creditor, who has taken in execution the goods of his debtor, can not afterward discharge them from the execution, and continue his judgment in force as to the land of the debtor. GIBSON, J., in delivering the opinion of the court, said, among other things :

" The sum of the matter, therefore, appears to be this : Where the goods are actually seized, the property vests in the sheriff, and the debt becomes satisfied, as to the judgment creditor, who can look only to the sheriff, unless where the latter chooses to return *nulla bona*, and there he becomes answerable to the judgment creditor for his false return, who may also levy the same goods on another execution. Here the sheriff returned, that he had levied and left the goods in the possession of the debtor, and the judgment must therefore be treated as having been at one time actually satisfied. Whether it might not be restored to its former incidents, by the agreement of the parties, as between themselves, is not the question ; assuredly it could not be restored so as to deprive third persons of an advantage which they had gained, by its having at any period been discharged; consequently, its lien on this land is gone."

The same doctrine was reaffirmed in the case of *Lyon* v.

*Hampton*, 20 Pa. State, 46, where it was held, that "The seizure of goods in execution to the amount of the debt is a discharge of the judgment whether the goods be sold or not, so far as the rights of other creditors are concerned, except where the plaintiff is deprived of the fruit of his levy, without any fault of his own."

In the case of *Ford* v. *Geauga County*, 7 Ohio, 492, it was held, that "When an execution is levied upon chattels sufficient to pay the debt, and subsequently the goods are restored to the defendant by consent of the plaintiff, the judgment lien on the defendant's land is lost as against a purchaser during the continuance of the levy."

It seems to us to have been clearly the fault of the plaintiff that the proceeds of the property levied upon were not applied to the payment of his judgment. The bankruptcy of the Bowluses did not in any manner deprive him of the lien which he had acquired upon the property by his levy, and he was entitled to have the proceeds applied to his judgment. By taking the proper steps he might have secured such application. This the authorities cited by the court below abundantly establish. It is said in Bump Bankruptcy, 8th ed., p. 164, in speaking of liens:

"The first point to be ascertained is, whether there is a valid lien according to the laws of the State where the property is situated. * * * If there is a valid lien under those laws, it follows the property into the court of bankruptcy, and will be there recognized, protected, and enforced."

We make the following extract from Herman Executions, p. 279:

"The lien of a levy made under an execution issued upon final judgment, obtained *bona fide* and without collusion, is preserved by the bankrupt law. It does not discourage diligence in the collection of debts. Creditors

who have obtained a lien by a legitimate effort to collect an honest debt are permitted to enjoy the advantage gained by their diligence. A levy that is good and creates a valid lien under the State laws is valid even in a bankrupt court. The law does not divest liens acquired and consummated before the adjudication in bankruptcy, but protects all valid judgments to the same extent as the constitution of the United States guards the obligation of contracts when attempted to be impaired by State laws, and is an affirmance of the universal principle, that ' a prior lien gives a prior claim, which is entitled to a prior satisfaction out of the subject it binds.' Courts in bankruptcy give effect to liens, according to priority."

It seems to us to have been clearly the fault of the plaintiff that the proceeds of the sale of the property levied upon were not applied to the payment of the judgment. The subsequent bankruptcy of the judgment defendants did not, as has already been said, deprive him of the lien which he had acquired by his levy, and he might have taken the proper steps to have the proceeds applied, as far as necessary, upon his judgment.

We believe it was the practice, to some extent, during the early period of the existence of the bankrupt law, for assignees to take possession of property levied upon by sheriffs before proceedings in bankruptcy were commenced, and not sold, and sell the same as assets of the bankrupt; the court of bankruptcy, upon a proper application, preserving the lien of the levy by making proper application of the proceeds of the sale. Even under this practice, it was clearly the duty of the plaintiff to have made application to the court of bankruptcy, for the proper application of the proceeds of the sale of the property levied upon.

The case, under the practice above noticed, is, in principle, much like that of *Frank* v. *Brasket*, 44 Ind. 92. There, a judgment had been recovered, upon which replevin

bail had been entered. An execution, issued upon the judgment, had been levied upon sufficient real property of the principal to pay the debt. A third person commenced an action, to which the judgment plaintiffs were parties, asserting an unfounded prior lien upon the property levied upon, and, through the fault of the execution plaintiffs, judgment was rendered establishing the alleged prior lien. The execution plaintiffs could have made such proofs, but did not, as would have defeated the supposed prior lien. They then levied upon the property of the replevin bail. This, it was held, could not be done. The court said : " It is settled that a levy upon property, real or personal, sufficient to pay the execution, operates as a satisfaction until such levy is legally disposed of by the sale of the property, or in some other legal manner. *Lindley* v. *Kelley,* 42 Ind. 294, and cases cited. According to the finding in this case, the levy upon the land of the principal debtors was available to satisfy the judgment, had the execution plaintiffs made use of reasonable diligence in protecting and following it up. It was only in consequence of their negligence in not making a proper defence against the pretended superior lien which was asserted, that the levy was rendered unproductive. Had they made a proper defence in that action, the court finds, they might have defeated the asserted lien and made the amount of their debt out of the property on which their execution had been levied. We think it is the duty of an execution plaintiff under such circumstances to make use of reasonable and ordinary diligence to protect his levy and make it available."

But, aside from the foregoing view of the case, there is another which is conclusive of the question. The assignee had no right to take the property from the sheriff, nor the sheriff to deliver it to him, unless it was done under some legal process, which does not appear. This has been settled by the Supreme Court of the United States. In the

case of *Marshall* v. *Knox*, 16 Wal. 551, 559, the court said, in speaking of the case then before it : "Such a case is similar to that of an execution, in reference to which it has properly held that where the levy is made before the commencement of proceedings in bankruptcy, the possession of the officer can not be disturbed by the assignee. The latter, in such case, is only entitled to such residue as may remain in the sheriff's hands after the debt for which the execution issued has been satisfied."

The case is one, therefore, in which it was the duty of the sheriff to proceed to make the money of the property levied upon ; instead of doing which, however, he surrendered it to another person without authority of law. Under such circumstances the levy very clearly operated as a satisfaction of the judgment; and it was not a lien upon the land purchased by Goodwine at the time of his purchase.

There is no error in the conclusions of law stated by the court below, of which the appellant can complain.

The appellee has assigned some cross errors which it will be unnecessary to consider, inasmuch as the judgment below in his favor will have to be affirmed.

The judgment below is affirmed, with costs.