Bement v. May.

Filed Nov. 27, 1893.

———◆———

No. 16,615.

## BEMENT v. MAY.

JUDGMENT.—*Review of.*—*Assignment of Error.*—*Sufficiency of.*—*Ground for New Trial.*—An assignment of error, in a proceeding to review a judgment, as well as an appeal, is insufficient where the assignment is only a cause for a new trial.

BILL OF EXCEPTIONS.—*Matter Stricken Out.*—*How Referred to in Bill.*—*Practice.*—Where a question sought to be reviewed is the exclusion, from an affidavit for a continuance, of certain language, and the bill of exceptions attempts to show what part of the affidavit is stricken out, by referring to the page and line of the affidavit, where

Bement v. May.

the same begun and where ended, the court can not know that the pages and lines of the affidavit, as copied into the record, are the same as the original, and no question is presented as to that ruling. The proper mode would have been to embody in the bill the language stricken out.

INSTRUCTIONS TO JURY.—*Joint Assignment of Several Instructions.— When Available Error.*—Where the giving, or refusal to give, several instructions is assigned as error, and the assignment joins all of the instructions by the conjunction "and," in such case there can be no available error, unless all the instructions given and so joined, or all the instructions refused and so joined, are erroneous.

COMPROMISE.—*Contract.—Prevention of Litigation.—Consideration.— Instructions to Jury.*—In an action on a compromise agreement for the prevention of litigation, an instruction that "If the plaintiff had no legal claim against the defendant at the time of the alleged agreement and compromise, it would be what is called, in law, a naked promise, and void," is palpably wrong, a valid legal cause of action not being necessary to support such an agreement.

CHANGE OF VENUE.—*Court Rule.—When Not Barred by.—Diligence.*— Where a party does not apply for a change of venue within the time limited by court rule, but applies therefor afterwards, alleging as a cause bias and prejudice of which he had no knowledge until the making of the affidavit, the party is entitled to the change, it not being necessary to allege that affiant had used diligence to learn of the existence of such prejudice at an earlier date.

NEW TRIAL.—*Motion for.—Decisions and Exceptions Carried Forward. —Change of Venue.*—A motion for a new trial, under the proviso of section 626, R. S. 1881, carries forward all decisions and exceptions thereto which are legally assignable as grounds for a new trial, to the time the motion is overruled, among which decisions is a ruling on a change of venue.

BILL OF EXCEPTIONS.—*When Properly Authenticated.—Change of Venue. —Judges, Regular and Pro Tem.—Functions of Each.*—Where a change of venue is taken from the regular presiding judge, and another is duly appointed and assumes jurisdiction of the case, the regular judge can perform no further functions in the case. And, in such case, where there are two bills of exceptions wholly dissimilar, except the formal beginning and conclusion, the one signed by the regular judge, the other following and signed by the judge *pro tem.*, the bill signed by the judge *pro tem.* can not embrace and authenticate the bill signed by the regular judge; and, therefore, the matters contained in the bill signed by the regular judge are not in the record, not being properly authenticated.

Opinion on petition for rehearing by McCABE, J.

From the Vigo Circuit Court.

*T. A. Nantz, T. Haymond, W. Eggleston, J. L. Mc-Master, A. P. Stanton* and *J. E. Scott,* for appellant.

*G. W. Faris* and *S. R. Hamill,* for appellee.

McCABE, J.—This was a suit brought in the court below by appellant against appellee, to review a judgment alleged to have been recovered theretofore in the same court by appellee against appellant.

A demurrer was sustained to the complaint to review, which ruling is the only error assigned here.

The errors assigned in the complaint to review are:

1. That the complaint did not state facts sufficient to constitute a cause of action.

2. Error in overruling defendant's demurrer to the complaint.

3. Error in overruling defendant's motion for change of venue from the county.

3½. Error in permitting plaintiff to amend complaint after the close of the evidence.

4. Error in overruling defendant's motion for a new trial.

5. Error in overruling defendant's motion in arrest of judgment.

The third and third and a half assignments of error are not well assigned, because they are but causes for a new trial, and if not embraced therein, then they are waived precisely the same as if appellant had appealed directly to this court for the correction of the supposed errors in said proceedings and judgment, instead of seeking to correct them by filing a complaint to review in the court where they are alleged to have been committed. *American Ins. Co.* v. *Gibson,* 104 Ind. 336; *Baker* v. *Ludlam,* 118 Ind. 87.

The complaint sought to be reviewed is substantially as follows: "That heretofore, to wit, on the —— day of

April, 1891, said plaintiff had a valid claim for the sum of $12,000 against said defendant, which said claim and demand accrued to said plaintiff because of certain false and fraudulent representations that had theretofore been made by said defendant to said plaintiff in reference to certain real estate that had theretofore been transferred by said defendant to said plaintiff, and because of the fact that theretofore, in said real estate transaction, the said defendant had promised and agreed to convey to the plaintiff certain real estate, which he had failed and refused to do, but had fraudulently conveyed the same to other persons than this plaintiff. The plaintiff avers that on said day the said defendant proposed to pay, in full settlement and adjustment of said claim, the sum of $4,500, which said proposition the said plaintiff, on said day, accepted, but that thereafter, and ever since, the said defendant has refused to pay said sum, although this plaintiff has demanded payment of the same, and it is now due and wholly unpaid. Wherefore plaintiff prays judgment for the sum of $5,000 and all proper relief.''

After the close of the evidence, the appellee was permitted to amend her complaint so as to show that in said real estate transaction plaintiff conveyed to defendant real estate of the agreed value of $24,000, and that defendant was to pay plaintiff therefor in cash and other real estate, and that the transaction was consummated. And that plaintiff, believing that she had been wronged and cheated, in that defendant had failed to convey to her certain of said real estate of the value of $6,000, so to be by him conveyed to her, but had conveyed it to another, and that she had preferred a claim against defendant for such wrongful conveyance and for falsely representing the values of the real estate so conveyed and to be conveyed to her, her claim therefor being for $10,000. In

all other material respects the amended complaint was the same as the original.

Appellant's counsel refer us to *Jarvis* v. *Sutton*, 3 Ind. 289, in support of their contention that the complaint is bad because it does not show a sufficient consideration for the alleged compromise. There was no compromise involved in that case. The suit was founded on an alleged trespass, and the defense relied on a contract void for want of consideration. All that is said in the opinion about a compromise was outside of the case, and not authority.

They also cite *Smith* v. *Boruff*, 75 Ind. 412, where this court says, at page 416: "That there must be at least a colorable ground of a claim, in law or in fact, to sustain an executory contract, given as a compromise of it. Can this be the case when the holder of a note has himself received payment thereof, and, notwithstanding such payment, insists on holding on to a security and to the note secured, the helpless debtor protesting meanwhile that payment has been made? It is not laying down too stringent a rule, in such a case, that the creditor shall be held to have knowledge of payments that he has received, and that he can not, by denying such payments, create a controversy which will support a promise to pay him a second time, in whole or in part, as the price of doing that which the law, and equity and good conscience, require that he shall do without further compensation."

There are no facts alleged in the complaint, as amended, that bring it within the rule announced. On the contrary, it is alleged, in substance, that plaintiff and defendant had made a trade, by which plaintiff had conveyed to defendant real estate of the agreed value of $24,000, for and in consideration of which defendant had agreed to convey to her certain other real estate and pay the balance in money; that certain of the real estate

which defendant was to convey to plaintiff, he had failed and refused to so convey, but had conveyed it to another, and that defendant made certain false and fraudulent representations to her concerning the value of the real estate which he was to convey to her, in all of which she claimed and believed he had damaged her $10,000, and was demanding its payment. And that defendant proposed to pay to her, in full settlement of said claim and demand, $4,500, which plaintiff accepted, and that defendant had ever since failed and refused to pay said $4,500, which amount is now due and wholly unpaid.

There is not a word in this complaint about the demand, either of the $10,000 or the amount agreed on as a compromise thereof of $4,500, ever having been paid or settled in any way otherwise than by the compromise alleged. *Warey* v. *Frost*, 102 Ind. 205, cited also by appellant, has no application, because, like the other, it was a compromise founded on a claim absolutely void in law.

*Wheeler* v. *Hawkins, Assignee*, 101 Ind. 486, had no question of compromise in it and has no bearing on this case.

The complaint, as amended, comes very near showing, if it does not show, that the claim compromised was a valid cause of action, which we need not and do not decide, because "the prevention of litigation is not only a sufficient but a highly favored consideration, and no investigation into the character or value of the different claims submitted will be entered into for the purpose of setting aside a compromise, it being sufficient if the parties entering into the compromise thought at the time there was a question between them." *Thompson* v. *Nelson*, 28 Ind. 431; *Wray, Admr.,* v. *Chandler, Guar,,* 64 Ind. 146; *Home Ins. Co.* v. *McRichards,* 121 Ind. 121; *Smith* v. *Smith,* 106 Ind. 43.

The complaint was clearly good, either on demurrer or on the assignment of error that it was insufficient in the complaint to review.

The next question made by appellant's counsel is, that the evidence is not sufficient to support the verdict in the judgment sought to be reviewed. We have examined the evidence and find that it was somewhat conflicting, but that the preponderance thereof is on the side of the verdict. However, if it appeared on paper, here, to preponderate against the verdict, still we could not reverse for that reason. We can only reverse when the facts in evidence and the inferences which the jury might draw therefrom tending to support the verdict, unopposed, is not sufficient to establish its truth.

The next question made relates to the exclusion of certain evidence contained in an admitted affidavit for a continuance. It was attempted to be shown in the bill of exceptions what parts of the affidavit were stricken out by reference to the page and line of the affidavit where the same began, and the page and line where the part stricken out ended, without embodying the language in the bill of exceptions.

This court has no means of knowing what language was intended to be stricken out, even though it should happen that the paging and lining of the affidavit before it was copied into this record should be the same as the paging and lining thereof now appear in this record. But we know that they were not the same, because the bill of exceptions, as copied into this record, says that the rejected language ended at line 31, page 49, at the word agreement. Now, we know that there could not have been 49 pages in the affidavit. Hence, it clearly appears that that paging and lining could not have been in the original bill of exceptions, and, therefore, we have nothing but the clerk's statement as to what part was

stricken out. The proper way would have been to have embodied in the bill of exceptions the language stricken out of the affidavit. No question is, therefore, presented as to that ruling.

The next complaint is made of the refusal ''to permit appellant to testify that he had not refused to convey the 4th street property to the plaintiff but had conveyed the same to another at the request of the plaintiff herself.''

The question was asked appellant, ''What, if anything, was said by you at the time when you first met Mrs. May after the agreement to make the trade?'' And it was proposed to prove, in answer to this question, ''that the property alleged, in plaintiff's complaint, to have been fraudulently conveyed to another person than plaintiff, was conveyed to one McDonald by the personal request of the plaintiff, Mrs. May.''

If this evidence had been competent for any purpose, which we do not and need not decide, it was not competent to prove the fact by appellant's own declaration, out of court, which the question proposed to do.

It was also proposed to prove, by appellant, what Balue should have said out of court, namely, ''that there was no false and fraudulent representation made in regard to said real estate transaction.'' It was not proposed to prove that this declaration, made by Balue, was made while he was engaged in, and as a part of, a transaction of his agency for Mrs. May, or that he was an agent at all, for her, when it was made. Such a declaration, therefore, was mere hearsay, and inadmissible.

The motion for a new trial joins all the instructions refused, from one to seventeen, by a copulative conjunction, ''and,'' and also, in like manner, joins all those given and excepted to. In such a case it has been held, by this court, that if all those refused were not good, and if all those given were not bad, there was no available

error.   *Ohio, etc., R. W. Co.* v. *McCartney*, 121 Ind. 385; *Pennsylvania Co.* v. *Sears*, 34 N. E. Rep. 15; *Cincinnati, etc., R. R. Co.* v. *Madden*, 134 Ind. 462.

And, as to those given at request of plaintiff, as well as the one given by the court on its own motion, it may be properly observed that the record does not show that they were all the instructions that the court gave the jury. .The presumption that the court did right, prevails until the contrary is affirmatively shown by the record.

For aught that appears, the court may have refused the whole seventeen because it had already fully instructed the jury as requested.   And we find many, if not all, of the refused instructions, not a correct declaration of the law.

The thirteenth instruction asked and refused is a fair sample of all, or nearly all, of the refused instructions. It reads as follows:   ''If the plaintiff had no legal claim against the defendant at the time of the alleged. agreement and compromise, it would be what is called, in law, a naked promise, and void, and you should find for the defendant.''

This proposed instruction is so palpably wrong that comment is quite needless;   it makes the compromise contract to depend wholly and entirely on the validity of the claim compromised.   That principle would render a contract of compromise a useless and idle ceremony; if, to enforce the compromise, there must be under it a valid legal cause of action, the compromise is nugatory and worthless.

In *Thompson* v. *Nelson, supra*, a compromise had been made of a bastardy suit, by which a promissory note was assigned to the relatrix, she supposing she was pregnant with a bastard child.   It afterwards turned out that she had not been pregnant at all, but that the defendant in the bastardy suit had had intercourse with her.   And

yet the compromise was upheld by this court. And again, as to the instructions given and excepted to, it might be sufficient to say that (as the record does not show that they were all the instructions that were given, and as those given do not appear to be "so palpably erroneous as that no supposable instructions would have made them correct) a reversal will not follow, even if some inaccuracies appear in the instructions upon which error is predicated." *Marshall* v. *Lewark*, 117 Ind. 377; *City of Indianapolis* v. *Murphy*, 91 Ind. 382; *Conway* v. *Vizzard*, 122 Ind. 266.

The next error complained of is the refusal to grant a change of venue from the county, in the proceedings and judgment sought to be reviewed. That proceeding took place at the adjourned May term of the Vigo Circuit Court, in the month of August, 1891.

After overruling the motion for a change from the county, the appellant applied for, and obtained, a change from the regular judge of that court, the Hon. David N. Taylor, upon an affidavit of the bias and prejudice of the regular judge. The regular judge called and appointed the Hon. Cyrus F. McNutt, judge of the superior court of that county, to try the cause. Judge McNutt accepted the appointment, appeared, assumed jurisdiction of the cause, and tried it during said adjourned term, before a jury, which resulted in a verdict for the then plaintiff, appellee here, for $4,500; a motion for a new trial was then filed by the then defendant, appellant here, assigning, among the various reasons therefor discussed above, that "the court erred in refusing to grant defendant a change of venue from the county of Vigo, upon motion and affidavit filed."

The motion for a new trial was not passed on until the next regular September term of the Vigo Circuit Court,

when it was overruled by the special judge, McNutt, who rendered the judgment sought to be reviewed, and gave sixty days' time to file bill of exceptions.

It appears from the record that the application for a change from the county was not made within the time required by the rule of that court, but to obviate which the affidavit stated that the affiant, the then defendant, appellant here, did not know of the alleged prejudice in the county against him until the making of the affidavit, which was after the expiration of the time required by the rule.

It is but fair to the learned judge who refused the change on that kind of an affidavit, to say that his ruling was justified and required by *Ringgenberg* v. *Hartman*, 102 Ind. 537, and *Witz* v. *Spencer*, 51 Ind. 253, the affidavit failing to state that any diligence had been used by the affiant to learn of the existence of the alleged prejudice at an earlier date.

But those cases have since been overruled on that point, by this court in *Ogle* v. *Edwards, Admr.*, 133 Ind. 358, 33 N. E. Rep. 95. So that the affidavit is good, and entitled the defendant to a change of venue, as the law has since been declared by this court.

To meet this, appelleee's counsel contend, first, that as no time was given by Judge TAYLOR, in which to file a bill of exceptions to bring into the record the affidavit and motion thereon for a change, and the ruling thereupon, and, as the bill was not filed until the next term, it is not properly in the record.

On the other hand, it is contended by appellant's counsel, that the proviso to section 626 R. S. 1881, carries such ruling and exception forward to the time the motion for a new trial was overruled.

That proviso reads as follows: "Provided, that if a motion for a new trial shall be filed in the cause in which

such decision, so excepted to, is assigned as a reason for a new trial, such motion shall carry such decision and exception forward to the time of ruling on such motion, and time may be then given by the court within which to reduce such exception to writing.''

Appellee's counsel contend that this court has decided, since the enactment of that proviso, that it does not operate to carry forward an exception to a ruling at a term previous to the one in which the motion for a new trial is overruled, and cite, in support of that contention, *Smith* v. *Flack,* 95 Ind. 116; *Boyce* v. *Graham,* 91 Ind. 420.

In both of these cases the decisions and exceptions sought to be carried forward by the motion for a new trial, to another term than that at which they had been made and taken, related to a decision rejecting pleadings and overruling a motion to make the complaint more specific, which could not constitute valid reasons for a new trial, and, therefore, could not lawfully be assigned as a reason in a motion for a new trial.

Errors relating to pleadings, it has long been settled in this court, do not constitute reasons for a new trial. *Hamilton* v. *Elkins,* 46 Ind. 213; *Marshall* v. *Beeber,* 53 Ind. 83; *Indianapolis, etc., R. R. Co.* v. *Stout, Admr.,* 53 Ind. 143; *Denman* v. *McMahin, Admr.,* 37 Ind. 241; *Line* v. *Huber,* 57 Ind. 261; *Ohio, etc., R. W. Co.* v. *Hemberger,* 43 Ind. 462; *Milliken* v. *Ham,* 36 Ind. 166; *Marks* v. *Trustees, etc.,* 56 Ind. 288.

Therefore, while a motion for a new trial, under the proviso, carries forward all decisions and exceptions thereto which are legally assignable as grounds for a new trial, to the time the motion is overruled, it does not carry forward any other decision and exception to another term.

The refusal of the change of venue from the county related to the trial, as its object was to get a fair trial,

and hence its refusal was ground for a new trial. *Shoemaker* v. *Smith*, 74 Ind. 71; *Horton* v. *Wilson*, 25 Ind. 316.

We are of opinion that the decision refusing the change of venue from the county, and exception thereto, were carried forward to the overruling of the motion for a new trial, and that the time then allowed, by the special judge, to reduce the exception to writing authorized the incorporation into a bill of exceptions of the affidavit and motion for a change of venue, ruling thereon and exception thereto.

Appellee, however, contends that if all that be true, the affidavit, motion, and ruling thereon, though copied into the transcript by the clerk, are not legitimately parts of the record, because not incorporated into the record by a valid bill of exceptions. Unless it is so incorporated, it can not be considered by this court. *Cincinnati, etc., R. R. Co.* v. *Leviston*, 97 Ind. 488.

The bill of exceptions which attempts to bring into the record the affidavit, motion, and ruling, purports to be, in its inception and conclusion, the act of the regular judge, TAYLOR. He signed the same within the time allowed by Judge McNUTT for filing a bill of exceptions as to the matters occurring before him.

The bill concludes thus: "And the defendant now tenders this, his bill of exceptions, and prays that the same may be signed, sealed and made a part of the record, which is done. Presented this 23d day of October, 1891.                    DAVID N. TAYLOR."

There is some contention by appellant that the bill of exceptions signed by Judge McNUTT, which immediately follows in the record the above, embraces and includes the first. The beginning of the one signed by Judge McNutt is as follows: "Be it further remembered that on the 25th day of August, 1891, it being in chambers of

the May term of the Vigo Circuit Court, the Hon. Cyrus F. McNutt presiding, the following further proceedings were had in this cause." And concludes as follows: "And the defendant now tenders this, his bill of exceptions, on this 23d day of October, 1891, and prays that the same may be signed, sealed, and made a part of the record, which is done, this 4th day of November, 1891.

Cyrus McNutt."

We do not think there is any tenable ground for holding that these two documents constitute but one and the same bill of exceptions. To do so, would require us to disregard what both judges have said over their signatures. One says that the document signed by him was tendered to him as a bill of exceptions, with a prayer that he sign, seal, and make the same a part of the record, which he says he did. The other certifies that the same things occurred as to the document presented to him. Each purports to be a separate bill of exceptions presented to the judge, with prayer that it be signed, sealed, and made part of the record by the judge, which was done in each case. Now, if that does not make the one signed by Judge TAYLOR his act, then it follows with equal force that the one signed by Judge McNUTT is not his act. There is nothing in the record to show that both documents were embodied in one writing, or that they were attached together when signed.

The contents of these two documents, except the formal beginning and conclusion, were wholly unlike and dissimilar. Therefore, we see no more evidence that the bill of exceptions signed by Judge McNUTT was intended to authenticate and bring into the record those matters embraced in the bill of exceptions signed by Judge TAYLOR, than that the latter intended to authenticate and bring into the record those matters embraced in the bill of exceptions signed by Judge McNUTT.

The next question that confronts us is, had Judge Taylor any power to sign a bill of exceptions in that case after he had appointed a special judge, and such appointee had assumed and retained jurisdiction in the case to its close? The Supreme Court of Wisconsin decided, under a similar statute to ours, that after the filing of a motion for a change, supported by affidavit of the bias and prejudice of the presiding judge, he had no power or jurisdiction to make any order in the case, except to order the change. *Fatt* v. *Fatt*, 48 N. W. Rep. 52.

This court has, by a long line of decisions, decided that when a judge goes out of office he can not sign a valid bill of exceptions as to matters occurring before he went out of office, but such bill, to be valid, must be signed by his successor. *Reed* v. *Worland, Exec.*, 64 Ind. 216; *McKeen* v. *Boord, etc.*, 60 Ind. 280; *Smith* v. *Baugh*, 32 Ind. 163; *Finch* v. *Travellers Ins. Co.*, 87 Ind. 302; *Travellers Ins. Co.* v. *Leeds*, 38 Ind. 444; *Ketcham, Admx.*, v. *Hill*, 42 Ind. 64; *Lerch, Admr.*, v. *Emmett*, 44 Ind. 331; *Toledo, etc., R. W. Co.* v. *Rogers*, 48 Ind. 427; Elliott's App. Proced., section 798.

Judge ELLIOTT, in section 799, of that valuable work, doubts the soundness of our decisions above quoted, so far as they sanction the power of the successor in office of the judge who tried the case to sign a bill of exceptions as to matters occurring under his predecessor, saying that the better rule is with those cases, holding that in such case a new trial should be awarded by the new judge, if there is a dispute as to what should go into the bill of exceptions. But nowhere is it either held or contended that the judge who goes out of office can afterwards sign a bill of exceptions that would be valid.

It is contended, by the appellee's counsel, that Judge TAYLOR, as to that case, was as effectually deprived of all

jurisdiction as if he had resigned immediately after appointing Judge McNUTT.

This court decided this precise question in favor of appellee's contention, fourteen years ago in *Lee* v. *Hills*, 66 Ind. 474.

This court there said: "In another view of this question, we think that this pretended bill of exceptions did not become a part of the record of this cause. As we have seen, the decision of the court in overruling the said motion of the appellants was made at the April term, 1876, of the court, on the 10th day of June, 1876. The record shows, that at the said April term, 1876, of the court, on the 13th day of June, 1876, on the appellants' application, the venue of this cause was changed from Judge Chambers Y. Patterson, the regular judge of said court, on account of his alleged 'interest and bias,' and the Hon. Solon Turman, judge of the thirteenth judicial circuit of this State,' was then and there duly called and appointed to try this cause. It is further shown by the record, that Judge TURMAN accepted such appointment, and on the trial of this cause, and when judgment was rendered therein on the 23d day of September, 1876, he was the judge of the court below.

"It seems to us, that after this cause was so removed from before Judge PATTERSON, and after Judge TURMAN, as judge of the court below, assumed jurisdiction of the case, Judge TURMAN alone was authorized by law to sign any bill of exceptions therein. Judge PATTERSON's connection with, or authority in or over, said cause was permanently dissolved. For the reasons given, the second alleged error, in our opinion, is not apparent in the record."

The record in that case showed that Judge PATTERSON had signed the bill of exceptions after Judge TURMAN had assumed jurisdiction, attempting to bring into the

record a motion and ruling thereon which had occurred under Judge PATTERSON before the application for a change of judge.  That is precisely the case here, and that case is decisive of the point here, and, therefore, we are constrained to hold that the affidavit and motion for change of venue and the ruling thereon are not properly in the record.

If the complaint was sufficient to withstand a demurrer, as we have held it was, it was more than sufficient to withstand the motion in arrest of judgment; and, as the only reason pointed out in support of that assignment is the insufficiency of the complaint, there was no error in overruling the motion in arrest.

Having carefully considered all the errors embraced in the assignment and pointed out in appellant's very able brief and reply brief, and finding no available error in the proceedings and judgment sought to be reviewed, therefore we conclude the court below did not err in sustaining the demurrer to the complaint for review.

The judgment is affirmed.

Filed May 23, 1893.

## ON PETITION FOR A REHEARING.

McCABE, C. J.—A very earnest petition for a rehearing is presented, in which appellant has enlisted our careful attention by confining his complaint to a single question, though very many questions were decided against him in the original opinion.  It is earnestly contended that we erred in holding that there were two bills of exceptions in the record instead of one.

It is not so important to determine whether there are two bills of exceptions in the record, as it is to determine whether the refusal of appellant's application for a change of venue from the county was brought into the record by a bill of exceptions, allowed and signed by Judge TAYLOR

long after the jurisdiction over the case had passed, on a change granted by him to Judge McNutt, and while the latter still retained that jurisdiction.

The record recites that "on the 4th day of November, 1891, the same being within the time allowed by the court to file the same, the defendant filed in the office of the clerk of the Vigo Circuit Court his bill of exceptions in the above entitled cause, said bill of exceptions being in the words and figures following, to wit:" (After stating the title of the cause, State, county and court, it begins as follows): "Be it remembered that on the 15th day of August, 1891, it being the —— judicial day of the adjourned May term of said court, the following pleas and proceedings were had in said cause before the Hon. David N. Taylor, sole judge of said court." Then follows a recital of those proceedings, among which were the affidavit and motion for a change of venue from the county, and refusal thereof and exception thereto. And, at the close of said proceedings, purporting to be a bill of exceptions, commemorating and. bringing them into the record, is the following conclusion: "That thereupon, on the same day the defendant moved the court for a change of venue from the judge of said court, the Hon. David N. Taylor, and filed and submitted his affidavit in support thereof, which motion was sustained by the court, and this case was set for trial before the Hon. Cyrus F. McNutt, judge of the Superior Court of Vigo county, and the defendant now tenders this, his bill of exceptions, and prays the same may be signed, sealed and made a part of the record, which is done. Presented this 23d day of October, 1891.

" DAVID N. TAYLOR."

We are asked to hold that the foregoing is not a bill of exceptions presented to, allowed and signed by, Judge Taylor, as the judge of the Circuit Court of Vigo county,

in relation to proceedings had before him in the Vigo Circuit Court. If language could be so framed as to make it a proper bill of exceptions presented to, allowed and signed by him, the language above quoted has done so. To avoid this inevitable conclusion, we are asked to regard the conclusion of the bill, and Judge Taylor's signature, as mere surplusage, and then connect this bill with what we treated in the original opinion as another bill of exceptions, signed by Judge McNutt, as all one bill of exceptions signed and allowed by Judge McNutt.

The difficulty we should encounter in adopting such a course is that the appellee would have the same right, and we would be under the same obligation to treat the concluding part of what is claimed as the bill of exceptions, signed by Judge McNutt, as well as his signature thereto, as mere surplusage, and, therefore, declare that there is no bill of exceptions in the record, a conclusion just as fatal to appellant as that before reached.

The law recognizing the possibility that attorneys may not agree about what took place in the trial court as to collateral matters not legitimately a part of the record proper, has provided that such matters may be brought into the record by a bill of exceptions allowed and signed by the judge before whom such matters occurred. When the statement of counsel differs in any respect from this authentic memorial which the law makes the exclusive source of information to us, we are bound to believe its statements instead of counsel, not because of lack of confidence in counsel, but because we are to receive our information alone from the record. The rule that allows courts, in construing a pleading or contract or other instrument, to treat certain parts as surplusage, has no application to a bill of exceptions, at least, no application to this particular case.

It is insisted that what follows immediately after Judge Taylor's signature, namely: "Be it remembered that on the 25th day of ————, 1891, etc.," and winding up with a formal conclusion of a bill of exceptions, to which Judge McNutt's signature is attached as judge *pro tem.*, would fail to constitute a proper bill of exceptions for want of a proper caption, and for want of a statement in the record that it had been filed in the clerk's office, unless the bill of exceptions signed by Judge Taylor is taken as a part of the bill of exceptions signed by Judge McNutt.

If that contention were allowed to prevail, it would result in destroying one bill of exceptions in order to make another. We did not pass on the question, in the former opinion, whether the defect suggested in what was treated as a bill of exceptions signed by Judge McNutt, was such as to render that bill of exceptions invalid or not.

Whether it was a valid bill of exceptions or not, was not necessary to be determined, because, in either event, the conclusion reached must be the same.

The petition for a rehearing is overruled.

Filed Nov. 28, 1893.